IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHRISTINE J. BLOOM, Individually, and as Guardian/Parent/Next Friend of S.B., a Minor,

Plaintiffs,

v.

PALOS HEIGHTS POLICE DEPARTMENT, CHRIS A. HODOROWICZ, JEFF MARRAN, PALOS HEIGHTS FIRE PROTECTION DISTRICT, PALOS COMMUNITY HOSPITAL PATRICIA MAMONE, ANTHONY MAMONE, and JOHN/JANE DOES,

Defendants.

No. 11-cv-5536

JURY TRIAL DEMANDED

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO PALOS HEIGHTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

NOW COME Plaintiffs, CHRISTINE J. BLOOM ("Bloom"), Individually, and as Guardian/Parent/Next Friend of S.B., a Minor, through their undersigned attorneys, and for their Memorandum of Law in Opposition to Defendants', Palos Heights Police Department ("PHPD"), Chris A. Hodorowicz ("Hodorowicz") and Jeff Marran ("Marran")(collectively "Palos Heights" or the "police"), Motion to Dismiss Plaintiffs' Amended Complaint, state as follows:

## BACKGROUND

When viewed in a light most favorable to Plaintiffs, the facts as alleged in the Amended Complaint establish that as of 4:47 pm on Friday, May 6, 2011, S.B., a 15 year old girl, was at her house enjoying playing video games and watching television with her boyfriend. (Amended Complaint ("AC"), ¶¶ 2, 13). Less than 45 minutes later, S.B. was being forcibly removed from

her home by the police (after they barged into the house without knocking and without a warrant), strapped down to a gurney and rushed off in an ambulance to the hospital for a psychiatric evaluation, without being given any opportunity to call her mother, having anyone accompany her to the hospital, or being allowed to take her cell phone so she could contact family members. (AC, ¶¶ 31, 35, 40). She was then forced to remain at the hospital alone and scared, under constant police guard, despite the fact that the police never provided a detailed description of any acts or significant threats that supported the need for immediate hospitalization. (AC, ¶¶ 41, 48). Her mother, Bloom, after returning from work to find S.B. gone, only learned that S.B. was at the hospital because she called S.B.'s boyfriend to find out her whereabouts. (AC, ¶ 49). The police never obtained consent from Bloom before removing her daughter from the house nor did they subsequently advise her that they were holding her daughter at the hospital. (AC, ¶¶ 43, 44, 48).

      This all happened even though S.B. did not commit a crime, never attempted to commit suicide, never threatened to commit suicide, never held a knife to her throat, had no cuts or abrasions on her body suggesting that she attempted to harm herself and did not demonstrate any behavior that in any way suggested that she was a danger to herself or a threat to others. (AC, ¶¶ 30, 33, 34, 37, 38, 62). S.B. advised the police that she did not attempt to commit suicide and did not need to go to the hospital, but they took her into custody anyway. (AC, ¶ 34). The police never asked, but S.B. had no previous history of attempted suicide or psychiatric evaluations. (AC, ¶ 36). S.B. was forcibly removed from her home and taken involuntarily to the hospital even though her adult brother and sister were present in the home at the time and neither they, nor S.B.'s boyfriend who was also present, called 911 to report an attempted suicide. (AC, ¶ 14). The police did not personally observe any evidence that supported reasonable grounds to believe

that S.B. was in a condition to warrant immediate hospitalization to protect herself or others from physical harm. (AC, ¶¶ 33, 37, 38). The only information the police had was a report of a possible suicide attempt from a person who they knew was never inside the Bloom residence and was not a witness to, and had no personal knowledge about, what allegedly transpired inside the Bloom residence. (AC, ¶¶ 19, 23, 24).

Moreover, before the police entered the Bloom residence, they knew that the report of an attempted suicide was false and had already pre-determined to take custody of S.B. and to transport her to the hospital for a psychiatric evaluation despite no objectively reasonable evidence to support such action. (AC, ¶¶ 124-127).[1]

Based on these allegations, Plaintiffs have asserted that the actions of the police violated a number of Plaintiffs' constitutional rights and constituted torts under state law.

## ARGUMENT

### I. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A LACK OF PROBABLE CAUSE FOR THE SEIZURE OF S.B.

Palos Heights argues that because Patricia Mamone ("P. Mamone") reported a potential suicide attempt to the police, they had probable cause to seize S.B. and to transport her for psychiatric evaluation as a matter of law and all claims of constitutional violations under the Fourteenth and Fourth Amendments as well as the state law tort claims must be dismissed at the pleading stage. However, this is not an accurate statement of the law, particularly when P. Mamone did not witness the alleged event, is not supported by any authority cited by Palos

[1] If necessary, additional facts can be plead to demonstrate that the police, and the Mamones, knew the report of an attempted suicide was false, or at least was highly unlikely. For instance, the term "cutting," referenced in the Amended Complaint, is not an indication of attempted suicide. "Cutting," or self-injury, is a coping mechanism that 1 out of every 5 teenagers uses to deal with stressful situations. It is well-known not to be an attempt at suicide and both the police and the Mamones knew this based on personal experience with teenagers who were "cutters."

Heights, and grossly distorts the concept of how probable cause is determined in a case such as this.

The police officers' actions in this case constitute a seizure within the meaning of the Fourth Amendment and may be made only upon probable cause, that is, only if there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard. *Villanova v. Abrams*, 972 F.2d 792 (7th Cir. 1992); *Chathas v. Smith*, 884 F.2d 980, 987 (7th Cir. 1989). Whether reasonable grounds exist (i.e., probable cause) is a matter of degree depending on the information available to the police in the particular circumstances, the determination of which falls within the province of the jury. *Illinois v. Gates*, 462 U.S. 213, 238-39, 103 S. Ct. 2317, 2332, 76 L. Ed. 2d 527 (1983); *Llaguano v. Mingey*, 763 F.2d 1560, 1565 (7th Cir. 1984); *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 438 (7th Cir. 1986), *cert. denied*, 481 U.S. 1028, 107 S. Ct. 1952, 95 L. Ed. 2d 525 (1987). Palos Heights' argument that this Court should usurp the jury's function and determine "reasonableness" at the *pleading stage* as a matter of law, when the facts viewed in a light most favorable to Plaintiffs support a reasonable inference that probable cause was lacking, is without merit.[2]

Plaintiffs have alleged sufficient facts to support an inference that the police had no objectively reasonable grounds to seize S.B. and transport her to the hospital. These allegations include: the police had no information from an eyewitness confirming that S.B. attempted suicide or held a knife to her throat; no knife was found; S.B. had no cuts or abrasions indicating an attempted suicide; S.B. did not exhibit any abnormal or bizarre behavior; S.B. made no threats about harming herself or others; S.B. was obviously alive, uninjured, and not in any immediate jeopardy at the time the police found her; the three other people in the residence with S.B.,

[2] Not surprisingly, the cases relied on by Palos Heights where the determination of probable cause was at issue were decided at the summary judgment stage or beyond when there was no issue of material fact, not at the pleading stage.

including two adults, never called 911, never indicated that S.B. was in any danger and never advised the police that they felt threatened; S.B. stated that she did not attempt to harm herself or others and further stated that she did not need a psychiatric evaluation; no history of prior suicide attempts or psychiatric problems was obtained; and, the police did not obtain parental consent nor did they make reasonable attempts to speak to S.B.'s mother. Finally, Plaintiffs have alleged that the police knew the information about an attempted suicide was false before they took S.B. into custody. Based on these allegations, there were no exigent circumstances that necessitated any of the actions taken by police.

Moreover, the Fourth Amendment's guarantee of reasonableness depends on not only how a seizure is made, but also how it is carried out. *Brokaw v. Mercer County*, 235 F.3d 1000, 1011-12 (7th Cir. 2000). Thus, even if there was probable cause to justify S.B.'s seizure, which Plaintiffs contend there was not, the manner in which the defendants seized S.B. may make the seizure unreasonable. *Id*. Here, Plaintiffs' allegations support an inference that the police officer's actions in entering the house without knocking, forcibly removing S.B. from the house against her will, strapping S.B. to a gurney despite no evidence that she was in immediate danger, no reasonable expectation she would attempt suicide at that point or even had the means to do so, and transporting her in an ambulance to the hospital, without parental consent, and without allowing S.B. to call her mother, or have a family member accompany her or take her cell phone with her, were not objectively reasonable methods of seizure of a minor in light of the circumstances. *See Jacobs v. City of Chicago*, 215 F.3d 758, 770 n.5 (7th Cir. 2000) (complaint stated a cause of action under the Fourth Amendment where allegations failed to justify a "no-knock" entry of plaintiff's apartment by breaking through door).

The "reasonableness" standard is not satisfied as a matter of law based solely on P. Mamone's report of an attempted suicide, even if false, as urged by Palos Heights. Although an arrest is not unlawful merely because the information on which it is based turns out to be wrong, merely receiving information does not justify every police action, particularly here where no crime was involved. Instead, the relevant inquiry is whether a report of attempted suicide, even if true, justified the seizure and whether the police reasonably believed that P. Mamone was telling the truth. *See, e.g., Lenard v. Argento*, 699 F.2d 874, 884 (7th Cir. 1983); *McKinney v. George*, 726 F.2d 1183, 1187 (7th Cir. 1984)(whether the arrested person actually engaged in the conduct that led to his arrest is unimportant provided that the police received complaints about such conduct that if true would justify his arrest and provided that the police had no reason to believe the complaint was untrue). Palos Heights has not cited to any authority holding that the report of an attempted suicide by a person with no first-hand knowledge justifies seizing an individual and transporting that individual for a psychiatric evaluation. Moreover, Plaintiffs have alleged facts to support an inference that the police knew the report was false, as well as other facts raising a question of whether the police reasonably believed P. Mamone was telling the truth.

Palos Heights relies on *Gramenos v. Jewel*, 797 F.2d 432 (7th Cir. 1986) and *McKinney*, *infra*, as support for the statement "Mamone's report (false or not) of a suicide attempt was sufficient probable cause" (Palos Heights' Motion to Dismiss, p. 9); however, neither case stands for such a broad, wide-ranging proposition.

In *Gramenos*, a case decided on summary judgment, the issue involved whether the police had probable cause to arrest the plaintiff based on the accusation by a security guard at a store who saw the plaintiff shoplifting. The Seventh Circuit stated that "[i]n Illinois, the report

of an *eyewitness* to a *crime* is sufficient to authorize an arrest." *Gramenos*, 797 F.2d at 439 (emphasis added). Here, P. Mamone was not an eyewitness to any of the events that allegedly occurred, nor is attempted suicide a crime. Thus, this case does not support Palos Heights' contention that a report of attempted suicide is sufficient probable cause as a matter of law.

Moreover, the Seventh Circuit based its decision on the inherent reliability of a security guard at a supermarket, who witnessed the events and signed a complaint to that effect. *Id*. The Seventh Circuit specifically refused to say that "police are always entitled to act on the complaint of an eyewitness" and further commented that under the undisputed facts before them the "chance that the complainant is pursuing a grudge" or "risk in believing an unknown witness" was small. *Id*. Here, because the police knew P. Mamone was not an eyewitness and did not reasonably rule out the risks of relying solely on her report as a basis to seize S.B., the inherent reliability relied on by the Seventh Circuit in *Gramenos* is missing. Indeed, Plaintiffs allege that Mamones, in conjunction with the police, were "pursuing a grudge" against Plaintiffs.

In *McKinney*, also decided on summary judgment grounds, the issue involved whether two separate arrests and commitments to a mental hospital were in violation of plaintiff's constitutional rights. The first arrest was based on personal observations by the police. The second 'arrest' (used loosely since plaintiff was not arrested on suspicion of an offense but was taken directly to the mental health center) was based on a handwritten petition signed by 22 residents of plaintiff's building, which was mailed to the police. *McKinney*, 726 F.2d at 1185-87.

The Seventh Circuit held that probable cause existed for the first commitment to a mental health facility because it was based on *personal observation* by the police of the plaintiff's behavior that he exhibited at the police station where he was taken after being arrested.

*McKinney*, 726 F.2d at 1188 (emphasis added). However, with respect the second arrest, the court stated:

> "If all that the police had had to go on was the neighbors' petition there would be considerable doubt that the arrest was reasonable. While declaring him a "nuisance," "dangerous," and "intimidating" to his neighbors, the petition provides no factual detail and it is hard to tell from its face whether it is anything more than a request to evict someone they didn't like."

Instead, in holding that probable cause existed for the second commitment, the court relied on evidence from a report of one of the psychiatrists who examined plaintiff at the mental health facility during the second commitment noting that the police did have personal knowledge about plaintiff brandishing knives in a threatening manner when they made the second arrest. *McKinney*, 726 F.2d at 1188-89. Thus, *McKinney* does not stand for the proposition, as urged by Palos Heights, that in all instances the police are entitled to rely on a private citizen's complaint. On the contrary, if all the police had to go on was the attempted suicide report by P. Mamone, a non-witness to the events, there is considerable doubt that the seizure was reasonable, particularly when attempted suicide is not a crime and such a report, standing alone does not warrant the actions taken by the police. At a minimum, Plaintiffs have adequately plead a lack of probable cause.

The decision in *Maxwell v. City of Indianapolis*, 998 F.2d 431, ___ (7th Cir.____) is more factually analogous to this case given Palos Heights argument that the police officers were justified acting solely on the report of attempted suicide. In *Maxwell*, the police arrested the plaintiff based solely on a report from his co-workers that he matched the description of a known fugitive. In determining that probable cause was an issue for the jury, the court stated:

> No other factors in this instance can be construed as circumstances warranting an arrest. The three officers do suggest, rather implausibly, that being alerted to the possible presence of the fugitive Moore in their jurisdiction somehow created some sort of exigent circumstances militating in favor of prompt and decisive action. Had [plaintiff] been [the

> fugitive], the police officers contend, he might have either gone out and committed further sex crimes or suicide, as he had previously attempted. However, we do not normally arrest people to protect them from themselves. More significantly, other than the warrant faxed from Los Angeles, the officers had no grounds for suspecting [plaintiff] was engaging in any of the conduct [the fugitive] was charged with. While the officers may prefer a standard of "better safe than sorry," they cannot hope to bootstrap an improbable threat to the community into probable cause given the apparent mismatch between [plaintiff] and the fugitive.

*See also Jurris v. McGowan*, 957 F.2d 345, 351 (7th Cir. 1992)( probable cause based solely on information the officer knew to be false or would have known was false had he not recklessly disregarded the truth violates the fourth amendment); *Butler v. Goldblatt Bros., Inc.*, 589 F.2d 323, 325 (7th Cir. 1978)(officers did not have reasonable grounds for believing the information to be reliable, since they did not undertake an independent investigation to corroborate the details of the accusations.).

Unlike in the cases cited by Palos Heights, the police here were not relying on an eyewitness to a crime or their own personal observation in support of the actions they took. As plead, other than the report from P. Mamone, which the police knew was false, no other circumstances warranted seizing S.B. Instead, sufficient allegations have been plead to suggest that the police did not have reasonable grounds for suspecting that S.B. was in need of immediate hospitalization for a psychiatric evaluation (or even that an attempted suicide took place), and despite the report from P. Mamone, Palos Heights cannot bootstrap an improbable threat to S.B.'s safety into probable cause as a matter of law when the report from P. Mamone, a non eyewitness, did not match in any way what the police personally observed.

The cases cited by Palos Heights are further distinguishable because attempted suicide is not a crime. Even if the police reasonably believed an attempted suicide took place based on the report by P. Mamone, that fact alone would, at best, only justify entering the house not the subsequent seizure. Once in the house, upon finding no evidence upon personal observation to

validate the report (and instead, as alleged, finding only evidence to refute the report), the "reasonableness" of taking S.B. into custody and transporting her to a mental health facility is clearly in doubt. This is particularly evident when the legal standard for the involuntary commitment of a minor under the Illinois Mental Health Code required "personal observation" of the immediate need for hospitalization to take custody of a minor involuntarily and to transport the minor to the hospital. See, 405 ILCS 5/3-504(b); *Villanova*, 972 F.2d at 795.

The State's *parens patriae* power as articulated in *Addington v. Texas*, 441 U.S. 418 (1979) also does not justify the "reasonableness" of the actions taken by the police in this case to defeat Plaintiffs' claims at the pleading stage. The State has the power to take actions to protect individuals when there is clear and convincing evidence to commit an individual involuntarily for an indefinite period to a state hospital; the *parens patriae* power does not permit a state to commit someone without any reasonable basis for doing so under the guise that it is for the protection of the mentally ill. Indeed, the Supreme Court stated that the State has no interest in confining individuals involuntarily if they are not mentally ill or if they do not pose some danger to themselves or others because the subsequent loss of liberty calls for a showing that the individual suffers from something more serious than is demonstrated by idiosyncratic behavior. *Addington*, 441 U.S. at 426-27. Here, questions certainly exist whether there was 'clear and convincing evidence' to commit S.B. under the *parens patriae* power.

According to Palos Heights' argument, police officers have *carte blanche* to take custody of a person whenever they receive a report of attempted suicide, no matter the circumstances or the reliability of the report, even if that person making the report has no personal knowledge of the suicide attempt. That is simply not true. While there may be instances when the actions police officers take based on complaints or reports should not be second-guessed in hindsight,

those cases involve unquestionably reliable eyewitness accounts which if true justified the arrest for the crime alleged to have taken place. This case does not fit that bill, particularly at the pleading stage.

Because Plaintiffs' allegations support a reasonable inference that the police did not have reasonable grounds to seize S.B. based solely on a report of attempted suicide, and the reasonableness of the police officer's actions should not be decided as a matter of law at the pleading stage, Palos Heights' motion to dismiss Count I (due process) must be denied. Similarly, Palos Heights' motion to dismiss Count III (unlawful seizure), Count IV (trespass/unlawful entry), Count V (false arrest), Count VI (false imprisonment), Count VII (battery), Count VIII (assault), Count XII (respondeat superior) and Count XIII (excessive force), which is based on the same or similar argument that the police had probable cause or were otherwise justified as a matter of law to seize S.B., also must be denied for the same reasons as discussed above. In other words, if the police did not have reasonable grounds to seize S.B., as sufficiently alleged in the Amended Complaint, then their actions would be unwarranted and constitute the constitutional violations and state law torts as alleged in Counts I, III, IV, V, VI, VII, VIII, XII and XIII. Palos Heights has not suggested that Plaintiffs have failed to state a claim in those Counts for any other reason and therefore further response with respect to those specific counts is not warranted.

## II. PLAINTIFFS HAVE SUFFICENTLY PLEAD A CLAIM FOR PROCEDURAL DUE PROCESS VIOLATIONS UNDER THE FOURTEENTH AMENDMENT

A State statute can create a liberty interest that could trigger a Constitutional violation for deprivation of procedural due process if fair procedures are not followed to deprive a plaintiff of that interest. *See* *Kraushaar v. Flanigan*, 45 F.3d 1040, 1048 (7th Cir. 1995). "Courts will find a liberty interest only if the state's statute or regulation used language of an unmistakably

mandatory character, requiring that certain procedures 'shall,' 'will' or 'must' be employed." *Kraushaar*, 45 F.3d at 1048. Here, 405 ILCS 5/3-504(b) states that the police officers, upon arrival at the facility, "shall" complete an application under Section 3-503 and "shall" futher include a detailed statement for the reason for the assertion that immediate hospitalization is necessary, including, among other things, a description of any acts or significant threats supporting the assertion. These procedures were mandatory and unmistakable and the failure to follow them, as alleged, constitutes a procedural due process violation under the Fourteenth Amendment.

## III. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED AN EQUAL PROTECTION CLAIM (COUNT II)

To state a 'class of one' equal protection claim, a plaintiff must allege: (1) she has been intentionally treated differently from others similarly situated; and (2) there is no rational basis for the difference in treatment or the cause of the differential treatment is a "totally illegitimate animus" toward plaintiff by Palos Heights. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 145 L. Ed. 2d 1060, 120 S. Ct. 1073 (2000); *Nevel v. Vill. of Schaumburg*, 297 F.3d 673, 681 (7th Cir.2002). Plaintiffs have satisfied these pleading requirements.

When viewed in total, with all inferences in Plaintiffs' favor, the Amended Complaint can be fairly read to claim that Palos Heights does not seize a person every time there is a report of attempted suicide and that S.B. was seized because of a "totally illegitimate animus" by Palos Heights.

## IV. THE EXIGENT CIRCUMSTANCES DOCTRINE DOES NOT BAR PLAINTIFFS' TRESSPASS/UNLAWFUL ENTRY CLAIM

The Fourth Amendment has been interpreted to require that the police have a warrant if they want to arrest a man in his home. *Payton v. New York, 445 U.S. 573, 585-90, 601, 63 L. Ed.*

*2d 639, 100 S. Ct. 1371 (1980)*. The Supreme Court has also held that the Fourth Amendment prohibition against unreasonable searches protects against warrantless intrusions during civil as well as criminal investigations. *See Marshall v. Barlow's, Inc.,* 436 U.S. 307, 312, 56 L. Ed. 2d 305, 98 S. Ct. 1816 (1978); *accord, In re Cerro Copper Products Co.,* 752 F.2d 280, 282 (7th Cir. 1985). Here, S.B. was seized in her home and while a warrantless entry and search of a residence can in certain circumstances be reasonable, in Fourth Amendment terms, if the government can demonstrate certain exceptional types of exigent circumstances, Plaintiffs have sufficiently alleged that there was no imminent threat to the life or safety of members of the public, the police officers, or a person located within the residence, to reasonable support a finding of exigent circumstances at this stage, particularly when Plaintiffs have alleged that the police knew the report of attempted suicide was false.

## V. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs adopt and incorporate the arguments in its Memorandum of Law In Opposition to the Mamones' Motion to Dismiss (Docket Entry No. 50) on the issue of whether the Amended Complaint states a claim for intentional infliction of emotional distress as if set forth fully herein. In addition, it is well-established that extreme and outrageous conduct can arise from the abuse of a position of power. *Doe v. Calumet City*, 161 Ill. 2d 374, 392-93 (1994). In that regard, the Restatement (Second) of Torts includes police officers as one of the types of individuals who, in abusing authority, can become liable for extreme abuses of their positions. *Id.* (citing Restatement (Second) of Torts § 46, Comment e, at 74 (1965)).

Here, Plaintiffs have sufficiently alleged that the police officers, in acting on information they knew to be false, abused their positions in an extreme manner.

## VI. PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A CONSPIRACY CLAIM

Plaintiffs adopt and incorporate by reference the arguments in their Memorandum of Law In Opposition to the Mamones' Motion to Dismiss (Docket Entry No. 50) on the issue of whether a conspiracy claim has been sufficiently alleged as if set forth fully herein. Moreover, Palos Heights' only argument for dismissal of the conspiracy claim is that Plaintiffs have failed to state an independent cause of action underlying the conspiracy. For the reasons set forth above, Plaintiffs have, in fact, sufficiently alleged that Palos Heights committed an overt tortious or unlawful act in furtherance of the conspiracy.

## VII. PLAINTIFFS HAVE SUFFICENTLY PLEAD A CONSPIRACY CLAIM PURSUANT TO SECTION 1985(3)

To plead a claim of conspiracy to violate civil rights under Section 1985(3), a plaintiff must allege: (1) a conspiracy (agreement) between two or more persons, (2) established to deprive a person or class of persons of the equal protection of the laws, (3) an act in furtherance of the conspiracy, and (4) deprivation of any right or privilege of the person or class of persons. *Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 642 (7th Cir. 2006). Plaintiffs have plead that the police agreed on a plan with the Mamones to seize S.B., despite knowing the report of attempted suicide was false and regardless of any personal observation of any evidence to support the seizure, to deprive her of the equal protection of the laws. And although the Amended Complaint may not be artfully plead, it arguably can be read to allege that these actions were due to "class-based, invidiously discriminatory action" because Plaintiffs were female. *Murphy v. Mt. Carmel High School*, 543 F.2d 1189, 1192 n.1 (7th Cir. 1976).

## VIII. PLAINTIFFS HAVE SUFFICIENTLY PLEAD WILLFUL AND WANTON CONDUCT

Plaintiffs have successfully alleged all the necessary elements of a negligence claim. Palos Heights does not contest this and instead argues that Plaintiffs' negligence claim must be dismissed because Plaintiffs "must *establish* willful and wanton conduct within the meaning of the Tort Immunity Act." Notwithstanding whether the Tort Immunity Act applies, Plaintiffs' have alleged facts that, if true, would clearly constitute willful and wanton conduct on the part of Palos Heights.

## IX. PLAINTIFFS HAVE ALLEGED FACTS TO OVERCOME A QUALIFIED IMMUNITY DEFENSE AT THE PLEADING STAGE

As government officials performing discretionary functions, the police officers may be shielded from liability for civil damages only if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727 (1982). But as argued above, allegations exist to support the proposition that Palos Heights blatantly violated the Plaintiffs' Fourth Amendment rights. At a minimum, this Court should hold that the present record is insufficient for making a determination on the immunity issue at this stage of the proceedings.

WHEREFORE, for the foregoing reasons, Plaintiffs, CHRISTINE J. BLOOM, Individually, and as Guardian/Parent/Next Friend of S.B., a Minor, respectfully request that this Court deny Palos Heights' Motion to Dismiss in its entirety;

In the alternative, to the extent this Court determines that any aspect of the Amended Complaint is insufficient to state a claim, Plaintiffs request leave to file a Second Amended Complaint to include additional facts and correct any deficiencies.

Dated: October 25, 2011

/s/ David G. Wix____________
THE WIX LAW GROUP, LLC

David G. Wix
THE WIX LAW GROUP, LLC.
500 Lake Cook Road
Suite 350
Deerfield, IL 60015
(847) 267-9949
(866) 267-2949 (fax)
Email: dwix@wixlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, an attorney for Plaintiffs, hereby certify that on October 25, 2011, I caused to be electronically filed the foregoing Plaintiffs' Memorandum of Law In Opposition to Palos Heights' Motion to Dismiss with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Jana L. Brady
Scott George Salemi
Heyl, Royster, Voelker & Allen
120 West State Street, 2nd Floor
P.O. Box 1288
Rockford, IL 61105
Phone: 815.963.4454
Fax: 815.963.0399
jbrady@heylroyster.com
ssalemi@heylroyster.com
rckecf@heylroyster.com

Maura Yusof
Heyl, Royster, Voelker & Allen
60 West Randolph
Suite 200
Chicago, IL 60601
Phone: 312-762-9287
***Attorneys for Patricia and Anthony Mamone***

Michael R. Hartigan
Patrick H. O'Connor
Hartigan & O'Connor, P.C.
20 North Clark Street, Suite 1250
Chicago, IL 60602
Phone: 312-201-8880
Fax: 312-291-8905
patoconnor@hartiganlaw.com
mhartigan@hartiganlaw.com
***Attorneys for Palos Heights Police Department, Chris A. Hodorowicz and Jeff Marran.***

Matthew J. Egan
Pretzel & Stouffer, Chartered
One South Wacker Drive, Suite 2500
Chicago, IL 60606
Phone: 312-346-1973
megan@pretzel-stouffer.com
***Attorneys for Palos Community Hospital***

Steven M. Puiszis
Peter A. Walsh
Hinshaw & Culbertson LLP
222 North LaSalle Street, Suite 300
Chicago, IL 60601-1081
Phone: 312-704-3000
spuiszis@hinshawlaw.com
pwalsh@hinshawlaw.com
***Attorneys for the Palos Heights Fire Protection District***

/s/ David G. Wix__________
David G. Wix