IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHRISTINE J. BLOOM, individually, )
etc., )
 )
        Plaintiff, ) No. 11 C 5536
 )
  v. )
 )
PALOS HEIGHTS POLICE DEPARTMENT, )
et al., )
 )
        Defendants. )

MEMORANDUM

Because of the obvious attempt by the counsel for plaintiff Christine Bloom ("Bloom") to reshape this lawsuit into something quite different because he must have sensed which way the legal wind was blowing on defendants' Fed. R. Civ. P. ("Rule") 12(b)(6) motion to dismiss, this Court's lengthy January 4, 2012 memorandum opinion and order that granted the dismissal motion included this n.5:

> Something must be said about Bloom's belated effort to inject alleged sex discrimination into the case. When any lawyer (or any client) simply changes the facts because the law demands something other than what the original version of the facts will provide, that dubious tactic brings Rule 11(b) into play--and it is difficult to ascribe any other motive for the new assertion in this case. Bloom's counsel is ordered to submit an appropriate affidavit from Bloom on or before January 16 identifying any good faith predicate for the change in theories.

Counsel has responded by filing a document labeled "Affidavit"--signed not by Bloom, as directed, but by counsel himself--together with a letter to this Court that accompanied

the transmittal of the Judge's Copy and that stated in part:

> We believe this complies with what is being sought by the request in Footnote No. 5, but if not, or if additional information or affidavits are required, please let us know.

To be blunt, the answer to counsel's inquiry is "No"--in major part the submission consists of arguments rather than evidentiary facts, though the arguments are extraordinarily contrived, reminiscent of times past when the New Yorker magazine would sometimes insert a small and invariably bizarre item to fill in the space following a major piece that had ended in mid-column and would label that filler "Department of Clotted Nonsense."

In material part counsel attempts to support his attempted transformation of the Complaint from what it was--an account of a contretemps growing out of a dispute about the codefendant parents of a teenage son dating Bloom's teenage daughter--into claimed sex discrimination by Palos Heights' defendant police officers by stating (Aff. ¶5):

> In the original Complaint, I included allegations that Bloom and S.B. are female.

Sure enough, Amended Complaint ("AC") ¶1 does identify Bloom as the mother of her daughter (as though the name "Christine" were not itself enough to confirm that she is female), while AC ¶2 identifies the daughter as "a 15-year-old minor female." But so what? Not a word in the AC's remaining 147 paragraphs that fill

22 pages with an extraordinarily detailed account of events even hinted that the defendant police officers' complained-of actions were assertedly taken (even in part) because of sex-based considerations.

Yet from those two mere identifying references counsel has taken the impermissible quantum leap of asserting that the reader should have been able to divine that sex discrimination was afoot--that the complained of conduct was taken by the defendant officers because Bloom was a woman. In that regard counsel has chosen to ignore his own AC ¶30, which alleges that the officers, who had responded to a 911 call, spoke to the mother of the teenage son at the scene and then acted on the information that she provided them--they caused Bloom's daughter to be taken to the hospital for a psychiatric evaluation without Bloom having been at the scene or even speaking to them.

Talk about a fanciful reconstruction of the facts--facts that reflect the officers as having paid heed to information given them by a woman, with no input having been provided by Bloom herself--in an effort to evidence (or even imply) a conspiracy based on Bloom's sex! In candor, that feeble non sequitur could scarcely have survived in the heyday of the now-rejected overgenerous statement in Conley v. Gibson, 355 U.S. 41, 45-46 (1957) as to Fed. R. Civ. P. ("Rule") 12(b)(6) evaluations--a statement that has been replaced by the

plausibility requirement announced in the <u>Twombly</u>-<u>Iqbal</u> canon.

And the same lack of justification applies to the other added rationalizations that counsel has put forth in his argumentative submission. Without exception they would require the drawing of highly attenuated and implausible inferences from assertions that do not qualify as reasonable in any real-world sense.

It is frankly difficult to justify such post-hoc efforts at a bailout, and consideration might well be given to a possible sanction for counsel's noncompliance with Rule 11(b)'s requirement of objective good faith. But this Court will not entertain that possibility--instead the criticism contained in this memorandum will be viewed as sufficient.

_____
Milton I. Shadur
Senior United States District Judge

Date: January 23, 2012